UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LOYD C. WINN, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 7:10-CV-0093-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The Claimant, Loyd C. Winn, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and period of disability. Mr. Winn timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Winn was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision and he has at least a high school education. (Tr. at 21.) His past work experiences include employment as an over-the-road truck driver, route delivery driver, and propane gas delivery driver. *Id.* at 20. Mr. Winn claims that he became disabled on February 14, 2005, due to degenerative disk disease ("DDD") of the lumbar spine. *Id.* at 16.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Winn meets the nondisability requirements for a period of disability and DIB and he was insured through the date of his decision. (Tr. at 16.) He further determined that Mr. Winn had not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Claimant's degenerative disk disease of the lumbar spine is considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 18.) The ALJ determined that Claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 417.967(b), subject to the following limitations:

> [The Claimant is restricted] to lift[ing] 20 to 30 pounds with the right hand, 20 pounds with the left, and occasionally lift[ing] 30 to 40 pounds with both hands with a sit/stand option with sitting 30 minutes at one time, standing 20 to 30 minutes at one time, and walking 1/2 block at one time in an 8-hour workday with customary breaks.

*Id.*

The ALJ accepted the vocational expert's testimony that, given Claimant's RFC, he is unable to perform any of his past relevant work. (Tr. at 20.) The ALJ determined Claimant is a "younger individual," and has "at least a high school education," as those terms are defined by the regulations. *Id.* at 21. After considering his "age, education, work experience, and residual functional capacity," the ALJ found that "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 22. Specifically, representative occupations such as an "electrical worker," a "labeler" and a "tester" were found to be compatible with Mr. Winn's RFC, each with hundreds of jobs regionally and around 145,000 jobs nationally. *Id.* at 21. After careful consideration of the entire record, the ALJ concluded his findings by stating that "a finding of 'not disabled' is appropriate." *Id.* at 22.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1)

whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that

the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Winn alleges that the ALJ's decision should be reversed for two reasons. He contends, first, that the ALJ's Residual Functional Capacity ("RFC") findings are not based on substantial evidence. (Doc. 9 at 5.) Second, he contends that the ALJ failed to develop the record in order to resolve a conflict therein. *Id.* at 7.

A. Residual Functional Capacity.

An individual's RFC is an example of an issue that is administrative in nature, not a medical issue. Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL

374183 at *5.  According to Soc. Sec. Rul. 96-8p, "[t]he RFC assessment must always consider and address medical source opinions.  If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184 (S.S.A.). His decision must be based not only upon the medical evidence, but upon all the evidence in the record. *Id*. Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Claimant argues that the ALJ's RFC findings are not based on substantial evidence because he relied on a non-medical opinion.  (Doc. 9 at 6.)  Specifically, Claimant argues that the ALJ gave "great weight to the State Agency medical consultant opinion," although the ALJ State Agency RFC assessment was not prepared by a "M.D. medical consultant."  *Id.* Claimant concedes that there is no express requirement for a Medical Source Opinion ("MSO") or RFC assessment to be of record in order for the ALJ to make an RFC finding.  *Id.*  However, Claimant goes on to argue that the ALJ is required to "review and accord weight to medical opinions" and an "MSO

of some kind is crucial to the analysis of functioning based on the Medically Determinable Impairments ("MDI") determined." *Id.*

Despite Claimant's allegations, the ALJ did not primarily rely on the State Agency Medical Consultant's opinion in determining Claimant's RFC. A thorough review of the record shows that the ALJ considered the objective findings of Claimant's treating physicians, Claimant's medical records, and Claimant's own testimony, in addition to the State Agency Medical Consultant's opinion.

The ALJ gave considerable weight to Dr. Anderson, who saw Claimant for medication management. (Tr. at 19.) Dr. Anderson's records show that Claimant complained of significant and constant back pain with radiation into the right leg with tingling and numbness of the leg, foot, or both. *Id.* The ALJ found that Claimant's complaints to Dr. Anderson were "totally inconsistent" with Dr. Ghavam's records[1] only a few months earlier. *Id.* Claimant's complaints of pain were also inconsistent with Dr. Anderson's examinations, "which consistently show negative straight leg raising sign in the sitting position, no spasm, 5/5 strength, and symmetrical muscle stretch

---

[1] *See infra* p.11.

reflexes and intact sensation at the toes." *Id.* Additionally, Dr. Anderson instructed Claimant to maintain his activity level as well as his home exercise program, and he never told Claimant to limit these activities. *Id.* Dr. Anderson's completed residual functional capacity assessments opined that Claimant could perform "a range of light work with standing 15 minutes, walking 30 minutes, and sitting 15 minutes at one time and frequently lifting/carrying 10 pounds and occasionally lifting/carrying 20 pounds." (Tr. at 20). The ALJ found that Dr. Anderson's opinion was consistent with the medical evidence of record and accorded considerable weight the the opinion. *Id.*

Because the ALJ's RFC decision must be based not only upon the medical evidence, but also upon all evidence in the record, the ALJ also gave weight to Claimant's own testimony regarding his functional capacity. 1996 WL 374184 (S.S.A.). Claimant testified he can, "stand about 20 to 30 minutes at a time and can walk about 1/2 block, then must sit. He can sit about 30 minutes at a time, lift 20 to 30 pounds, and occasionally lift 30 to 40 pounds with both hands." (Tr. at 18-19.)

The ALJ also considered Claimant's medical record which showed that

Claimant had objective findings of mild to moderate DDD, but it did not support Claimant's subjective complaints of totally disabling symptoms and limitations. (Tr. at 19.) In February 2005, X-rays showed no more than mild to moderate degenerative changes. *Id.* In July 2006, an MRI showed multilevel degenerative disk and degenerative facet change, but no dominant disk herniation was identified. *Id.* Moreover, Claimant received very little treatment other than medication and injections. *Id.*

Further, the ALJ accorded considerable weight to Dr. Ghavam, an orthopedic surgeon who performed two epidural injection procedures on Claimant. On July 5, 2006, Dr. Ghavam opined that Claimant was at a maximum medical improvement with a whole person impairment rating of 5% for disk protrusion. *Id.* Dr. Ghavam specifically noted that Claimant reported he "doesn't have pain all the time, just sometimes especially with weather changes" and "does not consider the pain disabling." (Tr. at. 19.) At that time, Dr. Ghavam opined "no work restrictions." *Id.*

To better understand Claimant's current limitations, the ALJ requested that Claimant see Dr. Crouch for a consultative physical examination on December 2, 2008. (Tr. at 17.) Although Claimant complained primarily of

right leg pain, Dr. Crouch noted that when Claimant stood he limped on the left leg and when questioned he changed to limping on the right leg. (Tr. at 19.) Dr. Crouch opined that this occurrence strongly suggested that Claimant's subjective complaints of pain and limitation of the right leg were not as severe as he alleged. *Id.* When Claimant saw Dr. Crouch in March 2006, he ambulated with a cane which Dr. Crouch observed to be "new without wear on the rubber tip." (Tr. at 20.) Moreover, no where else in the record is there documentation that Claimant ever used a cane for ambulation. *Id.* Based on Dr. Crouch's opinion, the ALJ found that Claimant lacked credibility regarding the severity of his pain and limitation.

In according great weight to the State Agency Medical Consultant's ("consultant's") opinion, the ALJ explained that the totality of the medical record and the consistency of the consultant's findings with the objective medical records supported his decision. Although the ALJ accorded great weight to the consultant's opinion, that does not mean that his RFC finding is not supported by substantial evidence. The ALJ considered the opinions of three medical physicians, Claimant's medical records, and Claimant's own testimony in addition to relying on the State Agency Medical Consultant's

opinion. As such, the ALJ's RFC finding is proper.

  B.  Failure to Develop the Record to Resolve a Conflict Therein.

Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ has the duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence he believes will prove his alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

Claimant's argument centers around the RFC assessment[2] provided by Dr. Anderson, Claimant's treating physician. Dr. Anderson opined that Claimant could "stand for fifteen minutes, walk for thirty minutes and sit for fifteen minutes at one time based on arthritis and decreased range of motion of the lumber spine, and chronic pain." (Doc. 9. at 7.) Claimant finds fault in the absence of "totals for an eight hour day," in Dr. Anderson's assessments. *Id.* Claimant claims that the ALJ did not "address the postural restrictions or the insufficiency in the record relating to the total numbers of hours Plaintiff could be expected to sit and be on his feet." *Id.* If

---

[2] Dr. Anderson provided two RFC assessments on December 6, 2007 and October 27, 2008, but the assessments were identical in substance. No changes were made from the December 2007 assessment to the October 2008 assessment except a change in date.

Claimant was not satisfied with the adequacy of Dr. Anderson's RFC assessments, then Claimant should have asked Dr. Anderson, his treating physician, to evaluate his restrictions based on an eight-hour workday. The regulations establish that claimant bears the burden to provide the relevant medical and other evidence he believes will prove his alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Claimant suggests that the record is incomplete because of the lack of an eight-hour workday analysis, but any insufficiency in the medical evidence of record lies solely with Claimant.

Claimant also argues that the ALJ failed to "explain if given considerable weight how this [Dr. Anderson's] assessment could comport with a light RFC for an eight hour day in light of never bending and stooping restrictions." *Id*. Claimant suggests that the ALJ should have recontacted the treating source to clarify the restrictions by Dr. Anderson, considering that Dr. Crouch's consultative impression involved something more than "merely degenerative disc disease of the lumbar spine." (Doc. 9. at 9.) Dr. Anderson's RFC assessment permits lifting which inherently requires both bending and stooping. Because Dr. Anderson's RFC assessment conceivably allows for both bending and stooping, claims of such a restriction imposed by

Dr. Anderson are without merit. Moreover, there was no need for the ALJ to recontact Dr. Anderson because any potential conflict was resolved after reviewing the totality of the record.

Despite Claimant's inferences, the ALJ's RFC decision must be based not only upon the medical evidence, but upon all evidence in the record. 1996 WL 374184 (S.S.A.). As the ALJ pointed out, the RFC is consistent with "claimant's statements at the hearing regarding his maximum functional capacity and is not inconsistent with the opinions of Dr. Anderson and Dr. Ghavam." (Tr. at 20.) Dr. Crouch noted, Claimant "complained of back tenderness and pain and exhibited reduced range of motion, but he exhibited normal motor strength of the extremities and was able to heel/toe walk." *Id*. at 19. Moreover, none of Claimant's treating physicians, including Dr. Anderson, put Claimant on any work restrictions or suggested that he limit his daily activities. For the foregoing reasons, Claimant's allegation of an unresolved conflict in the record is without merit.

IV. Conclusion.

Upon a thorough review of the administrative record, and after considering all of Mr. Winn's arguments, the Court finds the Commissioner's

decision is supported by substantial evidence and in accordance with applicable law. A separate order will be entered.

Done this <u>14th</u> day of <u>March 2011</u>.

                                     L. SCOTT COOGLER
                              UNITED STATES DISTRICT JUDGE
                                              153671